UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| OSCAR GRISSETTE, | ) |
| Plaintiff, | ) |
| v. | ) 14-CV-1478 |
| JODY REED, JOHN WEAVER, and ROBBIE JOHNSON, | ) |
| Defendants. | ) |

**OPINION**

**MICHAEL M. MIHM, U.S. District Judge.**

Plaintiff, proceeding pro se from his incarceration in Lawrence Correctional Center, pursues a claim that Defendants terminated him a second time from his prison bakery job in Illinois River Correctional Center in retaliation for Plaintiff's grievances and successful efforts to be reinstated to his job.

Before the Court are the parties' cross-motions for summary judgment. As more fully explained below, summary judgment must be denied to both sides because a rational juror could find for either side on this record.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment."  McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).  At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  Id.

## Facts

In March 2012, Plaintiff was fired from his prison bakery job at Illinois River Correctional Center on accusations that he had attempted to steal bacon.  According to Plaintiff, he had not tried to steal the bacon—the bacon had been given to him and other workers by the supervisor, but Plaintiff had been unable to eat the bacon because he was working so he stored the bacon in his locker and was carrying the bacon out from the locker room.  (Pl.'s Dep. pp. 13, 14-15.)  A disciplinary report was not written against Plaintiff for stealing bacon, even though he was terminated from his job.

According to Plaintiff, he filed a grievance about his termination on May 8, 2012, but received no response.  Plaintiff's counseling summary reflects that Plaintiff gave Counselor Shepler an unspecified grievance on May 8, 2012 which was forwarded to the grievance officer.  Plaintiff contends that the grievance officer at that time would have been Defendant Johnson.  (5/8/12 cumulative counseling summary, d/e 40, p. 41.)  Plaintiff avers that

he complained to Assistant Warden Morgan and Counselor Shepler on a number of occasions about Defendant Johnson's repeated failure to respond to this and other grievances. (Pl.'s Dec. para. 10.) Plaintiff was eventually told to resubmit his grievance.

Plaintiff filed another grievance in November 2012 about the job termination which was denied by Defendant Johnson for the stated reason that Plaintiff had disobeyed orders not to leave the bakery with the bacon. (12/19/12 Grievance Officer's Report, d/e 37-3, p. 3.)

In April 2013, Plaintiff talked to Assistant Warden Jackson about Plaintiff's termination from his bakery job. (Pl.'s Declaration para. 13; Pl.'s Dep. p. 15.) Assistant Warden Jackson intervened on Plaintiff's behalf and told Defendants Weaver and Reed that they should rehire Plaintiff. (Defs.' undisputed fact 11.) Based on a later conversation Plaintiff had with Assistant Warden Jackson, Plaintiff believed he would be rehired in April, but he was not. (Pl.'s Dec. para. 15.) Instead, Plaintiff received a memo dated May 28, 2013, from Defendant Weaver (asserting the title of Acting Superintendent of Illinois Correctional Industries) which stated:

> Please be advised, the Previous Acting C.E.O. of Correctional Industries had come out with a policy that states, anyone terminated for any reason related to the bakery, will no longer be eligible to be rehired period. This is not my policy. I would like to be able to give second chances to the individuals who deserve them. I understand your situation, but with the current policy there is nothing that can be done.

(5/28/13 Memo, d/e 40, p. 52.) The memo does not say who the previous acting chief executive officer was, when the purported policy barring all rehires was instituted, or how the policy was instituted or communicated. Plaintiff testified that Defendant Weaver was not the Superintendent on this date, (Pl.'s Dep. p. 53), and Defendant Weaver has not filed an affidavit.

On June 2, 2013, Plaintiff filed another grievance asking to be reinstated to his bakery job, citing to Assistant Warden Jackson's recommendation that he be rehired and asking that Jackson be contacted to confirm this. (6/2/13 grievance, d/e 40, p. 53.) Defendant Johnson, this time acting as Plaintiff's counselor not as a grievance officer, responded on June 11, 2013, writing that Plaintiff's termination had been appropriate because of Plaintiff's theft and that the Assistant Warden "would not be bothered with a phone call." Id. Johnson admits that he acted as Plaintiff's

counselor only from July 2, 2013 through July 24, 2013, meaning that Johnson would not have been Plaintiff's counselor on this date. (Defs.' undisputed fact 3.) Johnson has not filed an affidavit and does not explain why he completed the counselor portion of this grievance if he was not Plaintiff's counselor at the time.

Sometime between June 11, 2013 and June 16, 2013, Plaintiff showed Assistant Warden Jackson a copy of Defendant Weaver's memo barring rehires and Johnson's response to Plaintiff's grievance. (Pl.'s Dec. para. 20.) Based on a later conversation with Assistant Warden Jackson, Plaintiff believed that he was going to be reinstated. (Pl.'s Dec. paras. 21, 22.)[1] This time Plaintiff was correct. On June 19, 2013, Plaintiff was rehired to his bakery job, despite the purported policy against rehires. (Pl.'s Dec. para. 24.)

Five days after his reinstatement, Plaintiff was pulling a heavy cookie machine with four rollers across the floor. One of the rollers became stuck in a drain and the machine tipped over but did not fall completely. After several attempts, Plaintiff and other inmates

---

[1] Plaintiff avers that Assistant Warden Jackson told Plaintiff that he had overruled Defendants and ordered Plaintiff's reinstatement, but that Defendants were angry and would be looking for a reason to terminate Plaintiff. This is inadmissible hearsay---it cannot be admitted to show that Defendants were in fact angry and looking for a reason to fire Plaintiff. However, what Jackson said could be admissible to show why Plaintiff believed that he would be rehired.

were able to right the machine, but Plaintiff saw that the "bell housing unit" had been damaged. (Pl.'s Dep. pp. 19-20.) Plaintiff believed, based on the bakery's past practices when machines were damaged, and based on a meeting with Defendant Jody Reed after the cookie machine was damaged, that money would be deducted from the pay of Plaintiff and other inmates on the sweet goods crew, with Plaintiff bearing the most of the deductions, but that Plaintiff would not be terminated. (Pl.'s Dec. paras. 27-32.) Plaintiff filed an affidavit of an inmate who worked in the bakery from May 2011 to March 2013 who avers that the standard practice when machines were damaged in the bakery was to dock inmates' pay and that to his knowledge no one had been terminated from the bakery for damaging a machine. (Biladeau Aff. para. d/e 40 pp. 59-61.)

On June 26, 2013, Defendant Reed wrote Plaintiff a disciplinary report charging Plaintiff with damage or misuse of property. (5/26/13 disciplinary report, d/e 40, pp. 28.) Reed accused Plaintiff of "causing the bell housing, motor and drive linkage to be severely damaged," resulting in $900 in damage. Reed further wrote that Plaintiff had admitted to being careless. <u>Id.</u>

Plaintiff asserts that he never admitted to being negligent and he disputes that the cookie machine was damaged in the amount of $900. He submits service records which show that the bell housing was replaced or serviced on June 24, 2013, the day of the mishap, (d/e 40, p. 89), and he testified in his deposition that the machine was still running the next two days. (Pl.'s Dep. p. 66.) Plaintiff admits that there were two cookie machines, but Plaintiff testified that he could tell the difference between them and that he thought the other cookie machine was broken at the time. (Pl.'s Dep. p. 68.)

To prove that Plaintiff did cause $900 in damage, Defendants submit orders for a shaft gear motor, rocker arm, shuttle lever, and shuttle angle, which total $1,099.03. However, the orders are dated in March and October of 2014, about one year to one and one-half years after Plaintiff's incident with the cookie machine. Defendants offer no affidavit authenticating these orders or stating that these orders were to fix the damage caused by Plaintiff on June 24, 2013. On this record, a reasonable inference arises that the damage caused by Plaintiff involved only the bell housing and that Defendants have no evidence of the cost of fixing that bell housing.

Plaintiff was terminated from his bakery job on July 1, 2013,

found guilty of damaging property, and assessed $900.  (7/5/13 Adjustment Committee Report, d/e 37-5, p. 1.)

According to Plaintiff, Plaintiff spoke with Defendant Weaver after he was fired, and Weaver told Plaintiff "his reasoning why I was fired, why I should have never been hired back, why Assistant Warden Jackson don't run nothing, I mean he went into a little rant thing about, you know, basic, this is bakery, and ain't nobody going to tell him what to do and how to run the bakery and all this type of stuff."  (Pl.'s Dep. p. 53.)  Plaintiff also testified that Weaver told Plaintiff that "he made sure that I was going to not get my job back" by telling someone in Springfield that Plaintiff had intentionally broken the machine.  (Pl.'s Dep. pp. 54-55.)  Plaintiff further stated in his declaration that "John Weaver stated that since I like to write grievances that they would make sure I never return to the bakery." (Pl.'s Dec. para. 46.)   John Weaver also told Plaintiff that "he had spoken to Robbie Johnson and Jody Reed to make sure a ticket was written and that any grievance I filed would be denied."  (Pl.'s Dec. para. 48.)  These purported statements would be admissible at trial as a statement against interest.  Fed. R. Evid. 801(d)(2).

On July 5, 2013, Plaintiff filed a grievance about his discipline. On that date, Plaintiff's counselor would have been Counselor Harris because Plaintiff had been moved to a different housing unit the day he was terminated from his job. (Pl.'s Dep. p. 39.) About two weeks later Plaintiff was moved back to his original housing unit, where Defendant Johnson was Plaintiff's counselor. Johnson responded to Plaintiff's grievance on July 18, 2018, in the counselor section, writing "I/M was careless/negligent causing hundreds of dollars of damages to vital equipment. IDR written/[illegible]/ sanctioned appropriately. Deny." (d/e 40, p. 77.) Per the standard procedures, a grievance about a disciplinary report goes directly to the grievance officer, not the counselor. <u>Id.</u> (instructions to send grievance about discipline at present facility to grievance officer). Johnson has filed no affidavit and does not explain why he completed the counselor portion if the grievance should have gone directly to the grievance officer.

According to Plaintiff's counseling summary, Defendant Johnson spoke to Plaintiff on July 19, 2013 and noted in the summary:

> SW with the IM about the numerous grievances he had filed about being fired in the bakery. Tried to explain to the IM that by his own admission he had been fired once for theft, broke a conveyor belt that shut the bakery down for 3 days because he was beating a pan against it, and had now broke another machine costing $900 in repairs. Based upon all this, the bakery can't afford to employ him due to theft, damages, and danger of hurting someone. IM contends the State should pay for all this and let him continue to work. NO.

(7/19/2013 cumulative counseling summary, d/e 40, p. 39)(caps in original). Plaintiff testified in his deposition that the conveyor belt had broken on someone else's shift and that he and several other inmates had been charged restitution per standard procedure but that no one was terminated. (Pl.'s Dep. pp. 62-64.) He further testified that it is not possible to beat a pan on the part of the conveyor belt that broke—the chain. (Pl.'s Dep. p. 63.) Defendants do not now contend that Plaintiff broke the conveyor belt.

## Analysis

Plaintiff must point to admissible evidence that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory

action."  Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012)(quoted cite omitted).  If Plaintiff clears this hurdle, Defendants can still succeed if they prove that the retaliatory action would have occurred anyway, unless Plaintiff has evidence that Defendants' proffered reason for their action is pretextual, that is, a lie.  Mays v. Springborn, 719 F.3d 631, 633 (7th Cir. 2013); Thayer v. Chiczewski, 705 F.3d 237, 250-51 (7th Cir. 2012).

Plaintiff has met his burden, or so a rational jury could find.  Defendants do not dispute that Plaintiff's grievances and oral complaints to the Assistant Warden and others were protected First Amendment activity.  DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000)("[A] prison official may not retaliate against a prisoner because that prisoner filed a grievance.")(retaliation claim stated where inmate was removed from prison job shortly after filing a grievance); Pearson v. Welborn, 471 F.3d 732, 741(7th Cir. 2006)("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken.")

Defendants argue that Plaintiff has no evidence that Defendants' actions were motivated by retaliation, but Defendant Wear's purported admissions to Plaintiff allow an inference of

retaliatory motive.  Further, the timing of Plaintiff's termination, just days after Plaintiff's reinstatement by Assistant Warden Jackson, also allows an inference of retaliatory motive, particularly in light of the nonstandard handling of Plaintiff's grievances by Defendant Johnson, the confusing and unexplained memo authored by Defendant Wear after Plaintiff's reinstatement was recommended by the Assistant Warden, and the evidence that the damage to the machine was overstated in Defendant Reed's disciplinary report.  Defendants point out that Plaintiff did not name Defendants in his initial grievances about his first termination, but that does not detract from Plaintiff's evidence that Defendants knew about and were motivated by Plaintiff's protected speech to protest his termination, speech that resulted in his reinstatement.

    Defendants also argue that Plaintiff did not suffer a deprivation serious enough to deter him from exercising First Amendment rights because Plaintiff testified in his deposition that Defendants' actions would not deter him from filing grievances—"No, I wouldn't be less – if a situation occurred where I felt I had to grieve it, I'll grieve it."  (Pl.'s Dep. p. 73.)  However, the question is

not whether Plaintiff himself was actually deterred, but whether a person of "ordinary firmness" would be deterred.  Santana v. Cook County Bd of Review, 679 F.3d 614, 623 (7th Cir. 2012)(to state a claim the alleged adverse action—independently tortious or not—must be sufficient to deter an "ordinary person" from engaging in that First Amendment activity in the future)(citing Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011) and Fairley v. Andrews, 578 F.3d 518, 525 (7th Cir. 2009)); proposed Seventh Circuit pattern instruction 6.03 (Plaintiff must prove that the retaliatory conduct "would deter an average person in Plaintiff's circumstances from engaging in similar [*protected speech or conduct*]")(brackets and italics in original).  A rational juror could find that a retaliatory job termination would deter the average inmate from filing grievances or engaging in protected speech in the future.

Defendant Reed contends that the disciplinary report he wrote was not false.  That is true in so far as the report accuses Plaintiff of damaging the cookie machine.  But whether Plaintiff caused severe damage to the motor and drive linkage is disputed, as is whether the cost of the repairs were $900.  Additionally, whether Reed would have filed the report at all in the absence of a retaliatory

motive is disputed. Plaintiff has evidence that the standard practice was to dock inmates' pay to cover repairs, not to write disciplinary reports and terminate workers.

Defendants Reed and Weaver argue that they had a legitimate reason to terminate Plaintiff, based on Plaintiff's first termination and Plaintiff's damage to the cookie machine shortly after he was rehired. Yet, even if Defendants had submitted affidavits explaining their motivations, their sincerity would be a disputed question for the jury to decide. Plaintiff has enough evidence for a rational juror to find that the proffered reason for termination was pretextual. The same evidence discussed above that allows an inference of retaliatory motive allows an inference that Plaintiff would not have been terminated but for his protected speech to be reinstated. That is not to say that summary judgment is warranted for Plaintiff. The jury could rationally find for Defendants or for Plaintiff, so summary judgment must be denied to both sides.

Defendants also argue for qualified immunity, but the argument is perfunctory and ignores disputed issues of material fact. Resolving disputed facts in Plaintiff's favor, Defendants intentionally engineered Plaintiff's termination and discipline solely

out of retaliation for Plaintiff's grievances and discussions with Assistant Warden Jackson.  That conduct, if true, violated Plaintiff's clearly established rights.  DeWalt, 224 F.3d at 618; Pearson, Welborn, 471 F.3d at 741.

However, a legal question not raised by the parties may be lurking here.  In Herron v. Meyer, 820 F.3d 860, 863-64 (7th Cir. 2016), the Seventh Circuit wondered in dicta why "the First Amendment offers greater protection to prisoners than to public employees," in that a public employee's "personal gripe" about the workplace is not protected but "[m]any decisions assume that essentially everything a prisoner says in the grievance system—if not everything a prisoner says to a guard—is protected by the First Amendment."

This statement in Herron conflicts with Bridges v. Gilbert, 557 F.3d 541, 551 (7th Cir. 2009), a case in which the Seventh Circuit, reversing a prior decision, concluded that "a prisoner's speech can be protected even when it does not involve a matter of public concern."  The Seventh Circuit later stated more strongly in Watkins v. Kasper, 599 F.3d 791 (7th Cir. 2010), that, "[u]pon further consideration, we think that it's time to completely jettison

the public concern test from our prisoner free speech jurisprudence, . . . ."); *see also* <u>Ogurek v. Gabor</u>, 2016 WL 3512626 (7th Cir. 2016)(discussing <u>Herron</u> but concluding that any tension with prior precedent was irrelevant because an inmate's complaints about assaults and being framed were not "personal gripes"). The Seventh Circuit has not overruled <u>Watkins</u> or <u>Gilbert</u>, so the public concern test is not applicable to this case. The Court brings <u>Herron</u> to the parties' attention because the case may indicate a willingness by the Seventh Circuit to revisit the question.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment is denied (28, 29).

2. Defendants' motion for summary judgment is denied (36).

3. Defendants' motion to strike Plaintiff's motion for summary judgment is denied as moot (38).

4. Defendants' motion for leave to file a late reply to Plaintiff's response is denied as futile (41). The proposed reply is a motion to strike Plaintiff's response for failure to comply with local rules. While the Court could demand strict compliance with Local Rule 7.1(D)(6), Plaintiff's response clearly sets forth his positions in separately numbered paragraphs, citing to and attaching relevant,

admissible evidence. The disputed factual issues are readily identifiable from Plaintiff's response.

5. This case is referred to Magistrate Judge Hawley for a settlement conference. If settlement cannot be reached, final pretrial and trial dates will be scheduled.

6. The clerk is directed to notify Magistrate Judge Hawley of the referral of this case to him for a settlement conference.

ENTERED: 7/28/2016

FOR THE COURT:

                                **s/Michael M. Mihm**
                                 MICHAEL M. MIHM
                         UNITED STATES DISTRICT JUDGE